UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY BAXTER, | No. C 07-1032 JSW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| TOM FELKER, Warden, | |
| Respondent. | (Docket Nos. 19 & 20) |

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254 in which Petitioner challenges the constitutionality of his state convictions. For the reasons set forth below, the petition is DENIED.

## STATEMENT

In 2001, Petitioner shot and killed one man, and shot and injured another. After a trial on charges arising from this incident, Petitioner was convicted by an Alameda Superior Court jury of second degree murder, Cal. Pen. Code § 187, attempted murder, id. § 664/187, and possession of a firearm by an ex-felon, id. § 12022.52. The jury also found true three firearm sentencing enhancement allegations, id. §§ 1203.6(a)(1) & 12021(a)(a). The trial court found that Petitioner had suffered two prior felony convictions, one of which constituted a strike. The trial court sentenced Petitioner to sixty-six years to life in state

prison. Petitioner appealed. The California Court of Appeal for the First Appellate District affirmed the judgment. (Ans., Ex. 7 at 1–2.) The California Supreme Court denied his petition for review. (Id., Exs. 9.)

Evidence presented at trial shows that in March 2001, Petitioner, angry at Jhamani Jones for his alleged breaking of Petitioner's mother's car window, shot at Jones, striking him in the foot as Jones fled, while another shot happened to strike Anthony Blake, a bystander, killing him. (Id., Ex. 7 at 2.)

As grounds for federal habeas relief, Petitioner alleges that: (1) jury selection was tainted by the prosecutor's exclusion of jurors based on race, in violation of Petitioner's Sixth Amendment rights; (2) a witness's out-of-court testimonial statements were admitted in violation of Petitioner's due process and confrontation rights; (3) the facts of Petitioner's prior conviction were improperly admitted in violation of his due process rights; and (4) cumulative errors by the trial court violated Petitioner's due process rights.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

The first prong applies both to questions of law and to mixed questions of law and fact. *Williams v. Taylor*, 529 U.S. 362, 407–09 (2001). The second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

2

1 decides a case differently than [the Supreme] Court has on a set of materially
2 indistinguishable facts." *Williams*, 529 U.S. at 412–13. A state court decision is an
3 "unreasonable application of" Supreme Court authority, and thus falls under the second
4 clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the
5 Supreme Court's decisions but "unreasonably applies that principle to the facts of the
6 prisoner's case." *Id*. at 413. A federal court on habeas review may not issue a writ "simply
7 because that court concludes in its independent judgment that the relevant state-court
8 decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.
9 Rather, the application must be "objectively unreasonable" to support granting the writ. *Id*.
10 at 409.

11     Factual determinations by state courts are presumed correct absent clear and
12 convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not
13 altered by the fact that the finding was made by a state court of appeal, rather than by a
14 state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). A Petitioner must present
15 clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of
16 correctness; conclusory assertions will not do. *Id*.

17     Under Section 2254(d)(2), a state court decision "based on a factual determination
18 will not be overturned on factual grounds unless objectively unreasonable in light of the
19 evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

20 **DISCUSSION**

21 **I.  Batson**

22     Petitioner claims that the trial court violated his constitutional rights by denying
23 Petitioner's *Batson* motion. (Am. Pet. at 5.) In this motion, Petitioner contended that the
24 prosecutor exercised four peremptory challenges against four prospective black jurors, in
25 violation of Petitioner's jury trial rights under *Batson v. Kentucky*, 476 U.S. 79 (1986).

26     During jury selection, the prosecutor exercised seven of his peremptory challenges

27
28

**United States District Court**
For the Northern District of California

to strike African-American prospective jurors. Trial counsel objected to all seven uses.[1] The trial court held a hearing on the matter, and determined that the prosecutor's reasons for using those challenges did not fall afoul of the constitution and were supported by the record. (Ans., Ex. 7 at 7–9.)

On direct appeal and here, Petitioner objects to the prosecutor's use of his challenges against four of the prospective jurors. The first of the four prospective jurors was Jennifer S., a postal worker. The prosecutor asked to strike Jennifer S. because "had the potential to go 'postal,'" a conclusion the prosecutor based on S.'s demeanor and occupation. S. had "a scowl on her face throughout voir dire and was not pleasant to the prosecutor when questioned." The prosecutor also noted that S. had two nephews who had recently been arrested and charged with drug-related offenses. The trial court agreed with the prosecutor about S.'s demeanor, which "appeared to be different from that of the other jurors," and that her having close relations who had been arrested and charged was a legitimate reason to exclude her. (*Id*. at 11–12.)

The prosecutor challenged the second prospective juror, Dana N., on the basis of her job experience as a "human resources manager." The prosecutor stated that a person so employed would "tend to be more liberal-minded rather than pro-law enforcement or conservative-minded," a statement with which the trial court agreed. Another reason for the prosecutor's objection to Dana N. was her response to a hypothetical question on transferred intent which involved a defendant who had been drinking. The prosecutor felt, and the trial court agreed, that it was a reasonable inference that Dana N. "might not be sympathetic with most of the prosecution witnesses." Also, the prosecutor stated that Dana N.'s demeanor also was a basis for his objection — "during the voir dire process [,] her arms were crossed and she had a blank stare on her face." The trial court accepted this reason. (*Id*. at 13–14.)

---

[1] In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion under *People v. Wheeler*, 22 Cal. 3d 258, 280 (1978).

4

1	The third prospective juror was Robin L. The prosecutor's stated reasons for
2	striking her were that the father of her children was in prison on drug-trafficking
3	convictions, and that she had to testify as the main witness in an assault trial on a date that
4	conflicted with Petitioner's trial dates. The trial court accepted these reasons. (Ans., Ex. 7
5	at 15–16.)

6	The fourth, and final, prospective juror was Robert M. The prosecutor's stated
7	reasons for striking Robert M. were that (1) he had a "carefree" or "flippant attitude"
8	toward his son, a young "misguided" man, much like Jones, a victim and witness in the
9	action, and that (2) M. had a "casual" or "flippant" attitude about witnessing the murder of
10	his friend, who had been shot rather than M. The trial court accepted these reasons, and
11	found that the prosecutor's stated reasons for excluding these four jurors were legitimate
12	and nondiscriminatory. (*Id.* at 16–17.)

13	The use of peremptory challenges by either the prosecution or defendant to exclude
14	cognizable groups from a petit jury may violate the Equal Protection Clause. *See Georgia*
15	*v. McCollum*, 505 U.S. 42, 55–56 ( 1992). In particular, the Equal Protection Clause
16	forbids the challenging of potential jurors solely on account of their race. *See Batson v.*
17	*Kentucky*, 476 U.S. 79, 89 (1986). *Batson* permits prompt rulings on objections to
18	peremptory challenges pursuant to a three-step process. First, the defendant must make out
19	a prima facie case that the prosecutor has exercised peremptory challenges on the basis of
20	race "by showing that the totality of the relevant facts gives rise to an inference of
21	discriminatory purpose." *Id*., 476 U.S. at 93–94. Second, if the requisite showing has been
22	made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking
23	the jurors in question. *Id*. at 97; *Wade v. Terhune*, 202 F.3d 1190, 1195 (9th Cir. 2000).
24	Finally, the trial court must determine whether the defendant has carried his burden of
25	proving purposeful discrimination. *Batson*, 476 U.S. at 98; *Wade*, 202 F.3d at 1195. To
26	fulfill its duty, the court must evaluate the prosecutor's proffered reasons and credibility in
27	light of the totality of the relevant facts, using all the available tools including its own
28	observations and the assistance of counsel. *Mitleider v. Hall*, 391 F.3d 1039, 1047 (9th Cir.

5

2004). In evaluating an explanation of racial neutrality, the court must keep in mind that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *See Hernandez v. New York*, 500 U.S. 352, 355–62 (1991). It also should keep in mind that a finding of discriminatory intent turns largely on the trial court's evaluation of the prosecutor's credibility. *Rice v. Collins*, 546 U.S. 333, 340–42 (2006). A federal habeas court need not dwell on the first step of the *Batson* analysis if the matter has proceeded to the second or third step. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359.

The findings of the state trial court on the issue of discriminatory intent are findings of fact entitled to the presumption of correctness in federal habeas review, *see Purkett v. Elem*, 514 U.S. 765, 769 (1995), as are the findings of the state appellate court. *See Mitleider*, 391 F.3d at 1050); *Williams v. Rhoades*, 354 F.3d 1101, 1108 (9th Cir. 2004). Under AEDPA, this means that a state court's findings of discriminatory intent are presumed sound unless the petitioner rebuts the presumption by clear and convincing evidence. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)). The petitioner must show that the state court's conclusion is "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* ( citing 28 U.S.C. § 2254 (d)(2)). A federal habeas court may grant habeas relief only "if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice*, 546 U.S. at 338–41.

Applying these legal principles to the instant matter, the Court concludes that Petitioner's claim is without merit. The Court need not consider the first step of the *Batson* analysis, because the prosecutor offered a racially-neutral explanation for the four peremptory challenges at issue and the trial court ruled on the ultimate question of intentional discrimination. With respect to the second *Batson* step, the Court finds no evidence that would support a finding that the prosecutor's stated reasons — hostile

6

1  demeanor, flippant attitudes toward killing, employment history — were racially
2  discriminatory or otherwise constitutionally offensive.  As to the third *Batson* step, whether
3  there was intentional discrimination, Petitioner has not shown clear and convincing
4  evidence to rebut the presumption that the trial court's determination was correct, or shown
5  why this Court should disagree with the trial court's credibility determination in favor of
6  the prosecutor.

7  Finally, related to the third step of the *Batson* analysis, Petitioner asks this Court to
8  engage, as the state appellate court had done, in a comparative juror analysis as to each of
9  the four excluded jurors.  (Am. Pet. at 4.)

10  Comparative juror analysis — i.e., determining whether non-challenged jurors
11  possess any of the characteristics on which the prosecution challenged jurors in the
12  protected group —  may tend to prove discrimination at the third *Batson* step.  *Snyder v.*
13  *Louisiana*, 128 S. Ct. 1203, 1212 (2008).  It may also establish an inference of
14  discrimination at *Batson*'s first step.  *Boyd v. Newland*, 467 F.3d 1139, 1147–48 (9th Cir.
15  2006).

16  As to the exclusion of Jennifer S., there were three non-minority jurors who, like
17  Jennifer, had either been arrested or had close relatives who had been arrested, viz., Juror
18  Nos. 4, 6 & 11.  However, as the state appellate court found, these jurors were not similarly
19  situated to Jennifer.  Juror No. 4 had a "pro-prosecution perspective."  Juror No. 6 had little
20  contact with her father who had been in and out of jail.  Juror No. 6's parents had divorced
21  when she was a toddler, and she felt that the system had treated her father fairly.  Juror No.
22  11 stated that it was unlikely to affect her judgment that her brother was convicted of
23  robbery ten years earlier.  Finally, there were several other considerations particular to
24  Jennifer on which the exclusion was based.  They include the fact that Jennifer had a sour
25  demeanor, was unpleasant, and hesitated in answering the question whether she could be
26  fair and impartial, and that she arrived fifteen minutes late for jury service.  (Ans., Ex. 7 at
27  13; Ex. 3, Vol. 4 at 746.)  After this comparative juror analysis, the Court concludes that
28  Petitioner has not shown that the prosecutor's challenges were motivated by racial

7

discrimination, or were otherwise based on unconstitutional reasons.

As to the exclusion of Dana N., Petitioner draws the Court's attention to the fact that the prosecutor did not strike other jurors with administrative jobs, such as Juror No. 3, who was a "credit manager," and Juror No. 4, a "loan process manager." However, as the state appellate court points out, the prosecutor was unconcerned with Dana's current administrative job, but rather her previous employment as a human resources manager. (Ans., Ex. 3, Vol. 4 at 748.) Petitioner also disputes the prosecutor's reason that Dana's response to his hypothetical about people drinking indicated that Dana might not be sympathetic with the prosecution witnesses, who would testify at trial about drinking and drug use. (*Id*. at 749–50.) Petitioner asserts that Juror No. 4 described his wife as a long-term alcoholic. However, as the state appellate court pointed out, Juror No. 4 did not think discussion of alcohol use during the trial would interfere with his being an impartial juror. Finally, the prosecutor dismissed Dana because she had her arms crossed and gave him a blank stare while she was on the stand. The state appellate court accepted this as an acceptable reasons. (Ans., Ex. 7 at 13–15.) After this comparative juror analysis, the Court concludes that Petitioner has not shown that the prosecutor's challenges were motivated by racial discrimination, or were otherwise based on unconstitutional reasons.

As to the exclusion of Robin L., Petitioner contends that the prosecutor's exclusion of Robin because the father of her three children had been convicted of drug trafficking crime was pretextual. As support for this Petitioner points out that Jurors Nos. 4, 6 & 11 were not excluded, though they had the same sort of background. The trial court found that these three jurors were not similarly situated to Robin in that their responses indicated that their experience with law enforcement would not affect their ability to judge the case fairly. Also, Robin was differently situated from other jurors because, as the state appellate court found, Robin had a court date regarding to a criminal attack on her, a date that conflicted with Petitioner's trial schedule. (Ans., Ex. 3, Vol. 4 at 751.) After this comparative juror analysis, the Court concludes that Petitioner has not shown that the prosecutor's challenges were motivated by racial discrimination, or were otherwise based on unconstitutional

8

reasons.

As to the exclusion of Robert M., Petitioner compares Robert to Juror No. 4 who "had a strained relationship with is alcoholic wife, and his drug-abusing daughters." The state appellate court, however, found that the record did not indicate what kind of relationship Juror No. 4 had with his relations or what his attitude toward them was. (Ans., Ex. 7 at 16.) The prosecutor also based his exclusion on Robert's "casual" or "flippant" attitude toward witnessing the murder of a friend, an attitude the prosecutor felt was "inappropriate" in a juror on a murder trial. (Ans., Ex. 3, Vol. 4 at 755.) Robert's attitude was a circumstance specific to him, and unshared by other jurors. After this comparative juror analysis, the Court concludes that Petitioner has not shown that the prosecutor's challenges were motivated by racial discrimination, or were otherwise based on unconstitutional reasons.

Based on the above record, the Court DENIES Petitioner's claim.

**II.     Admission of Out-of-Court Statements**

Petitioner claims that the trial court violated his Confrontation Clause rights by admitting statements from Lawana Wyatt, Petitioner's girlfriend. (Am. Pet. at 15.) The state appellate court rejecting this claim, finding that though admission of the statements was in error under *Crawford v. Washington*, 541 U.S. 36 (2004), such error was harmless. (Ans., Ex. 7 at 26.)

Sergeant Mederios interviewed Wyatt, who was unavailable to testify at trial, several days after the shootings. According to Mederios's testimony, Wyatt stated in her interview that:

- A week before the shootings she saw Petitioner with a handgun, her description of which matched that given by Jones and another witness had given to police;
- Petitioner had an argument with Jones about his mother's broken car window;
- Petitioner told her that he shot at Jones three times as he ran away;

9

&blacktriangleright;   A day after the shooting, she drove Petitioner to his mother's house with the gun in a bag in the trunk;

&blacktriangleright;   Petitioner told her that Jones was angry, and was trying to shoot and kill Petitioner and that Petitioner was just protecting himself;

&blacktriangleright;   Petitioner told her that he was sorry that a bystander was killed.

Mederios testified that before the taped interview, Wyatt gave a version of events that matched that of Jones, but gave an admittedly inconsistent version after taping began. (Ans., Ex. 7 at 25–26.)

*Crawford* was issued after the completion of Petitioner's trial, but before direct review was completed. Under *Crawford*, testimonial hearsay statements are admissible under the Confrontation Clause only if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. 541 U.S. at 68.

Confrontation Clause claims are subject to harmless error analysis. *U.S. v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (post-*Crawford* case). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Applying these legal principles to the instant matter, the Court concludes that the trial court's admission of Wyatt's statements was harmless error. First, the statements were in part favorable to Petitioner, supporting his assertions of self-defense against Jones's aggression, and his regret that Blake was shot by accident. Second, and most important, the statements merely corroborated statements that had already been made at trial. For example, Wyatt's sister, Michelle Franklin, like Wyatt, had seen Petitioner with a gun before the shootings. Also, Petitioner admitted to shooting Jones, though he argues that it was in self-defense. Wyatt's statement that Jones and Petitioner had an argument about the broken car window corroborated the testimony of Jones and Petitioner. Wyatt's statement about Petitioner shooting Jones three times while Jones was running away. is consistent

with Petitioner's statement that he shot at Jones two or three times. Wyatt's statement about Petitioner's behavior after the shooting was corroborated by Franklin's testimony. (Ans., Ex. 7 at 27–28.) Petitioner's contention that the jury's reliance on this evidence was a constitutional error — the jury had asked for a readback of Medeiros's testimony — is refuted by the fact that Wyatt's statements were corroborated by other evidence. On this record, the Court concludes that Petitioner has not shown that his due process or Confrontation Clause rights were violated. This claim is DENIED.

### III.  Admission of Character Evidence

Petitioner contends that the trial court violated his right to due process by violating his state statutory rights under Cal. Evid. Code § 1103. (Am. Pet. at 20.) The state appellate court rejected this claim, finding that the trial court did not abuse its discretion. (Ans., Ex. 7 at 22.)

In 1988, Petitioner was convicted of assault with a deadly weapon. Before trial, the trial court ruled that if Petitioner testified, the fact of this prior conviction and a brief description of it would be admissible for impeachment purposes. The prosecutor then moved to introduce the facts underlying the conviction if the defense introduced evidence of Jones's character for violence. After trial counsel stated that he had not intention of offering such evidence, the trial court considered the issue moot. (*Id.* at 18.)

At trial, Petitioner referred twice in his testimony to Jones's criminal history and reputation for violence, including that Jones had robbed a gas station and snatched purses. The trial court, on the motion of the prosecutor, struck the testimony. The prosecutor then moved to admit the facts of Petitioner's 1988 conviction. The trial court granted the motion pursuant to Cal. Evid. Code § 1103(b),[2] concluding that Petitioner knew that if he testified

---

[2] Section 1103(b) reads as follows: "a criminal action, evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant under paragraph (1) of subdivision (a)."

1 as to Jones's character, evidence of Petitioner's criminal past might be admitted in
2 response. (*Id*. at 18–20.)
3     A writ of habeas corpus is available under § 2254(a) "only on the basis of some
4 transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d
5 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982))  It is
6 unavailable for violations of state law or for alleged error in the interpretation or
7 application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  It is unavailable
8 merely because "something in the state proceedings was contrary to general notions of
9 fairness or violated some federal procedural right unless the Constitution or other federal
10 law specifically protects against the alleged unfairness or guarantees the procedural right in
11 state court." *Middleton*, 768 F.2d at 1085.
12     Furthermore, a petitioner may not "transform a state-law issue into a federal one
13 merely by asserting a violation of due process." *Longford v. Day*, 110 F.3d 1380, 1389 (9th
14 Cir. 1996).  A state court's procedural or evidentiary ruling may be subject to federal
15 habeas review, however, if it violates federal law, either by infringing upon a specific
16 federal constitutional or statutory provision or by depriving the defendant of the
17 fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41
18 (1984).
19     Applying these legal principles to the instant matter, the Court concludes that
20 Petitioner has not shown that the trial court's ruling infringed on his federal constitutional
21 rights, or denied him a fair trial under due process.  First, this is a state law claim and
22 therefore is not cognizable in a federal habeas petition.  Second,  Petitioner by his
23 testimony invited the trial court to rule as it did.  Petitioner, unbidden, testified as to Jones's
24 reputation for violence and to specific instances of criminal conduct.  Petitioner did this
25 with the knowledge that the prosecutor previously had moved to admit evidence of the
26 1988 conviction if Petitioner testified as to Jones's character.  Because Petitioner invited
27 such a ruling, and its possible consequences for his defense, the Court cannot say that the
28 trial court violated his constitutional rights, and therefore the Court cannot say that the state

appellate court's determination was in error under AEDPA. Petitioner's claim is DENIED.

## IV. Cumulative Error

Although no single trial error is sufficiently prejudicial to warrant the granting of relief, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003). However, where no single constitutional error exists, there can be no cumulative error. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). The state appellate court rejected this claim, finding that Petitioner's "claim of cumulative prejudice without merit." (Ans., Ex. G at 51.)

The sole error in the underlying state proceedings is an error only because Respondent has made a concession. The claim related to this issue — Petitioner's *Crawford* claim — has been addressed above. Petitioner has not shown that there were any other constitutional errors. Accordingly, there can be no cumulative error. Petitioner's claim is DENIED.

## CONCLUSION

As to all Petitioner's claims, the Court concludes that the state court's adjudications were not contrary to, or unreasonable applications of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. 2254 (d)(1), (2). Accordingly, the petition for a writ of habeas corpus is DENIED.

Petitioner has filed for a permanent injunction and temporary restraining order (Docket No. 19) to restrain High Desert State Prison and its employees from prohibiting Petitioner's access to the courts. This action is not properly before this Court as a part of this habeas action. If Petitioner seeks redress for these grievances, he must file a separate action. Accordingly, Petitioner's "Complaint for a Preliminary Injunction and Temporary Restraining Order" is DENIED. Petitioner's related motion to dispense with a security requirement (Docket No. 20) is also DENIED. This order terminates Docket Nos. 19 & 20.

13

The Clerk shall enter judgment in favor of Respondent, terminate all pending motions, and close the file.

**IT IS SO ORDERED.**

Dated: August 6, 2009

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

KERRY L BAXTER,

        Plaintiff,

  v.

T FELKER et al,

        Defendant.

Case Number: CV07-01032 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 6, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kerry L. Baxter
V17238
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

Dated: August 6, 2009

Richard W. Wieking, Clerk
  By: Jennifer Ottolini, Deputy Clerk